IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI
WESTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No. 15-00249-01-CR-W-DGK |
| ) | |
| MICHAEL A. GREEN, ) | |
| ) | |
| Defendant. ) | |

REPORT AND RECOMMENDATION

This matter is currently before the Court on defendant Green's Motion to Suppress Evidence. For the reasons set forth below, it is recommended that this motion be denied.

## I. INTRODUCTION

On July 29, 2015, the Grand Jury returned a one count indictment against defendant Michael A. Green. The indictment charges that on September 4, 2014, defendant Green knowingly possessed with the intent to distribute fifty grams or more of methamphetamine.

On December 14, 2016, an evidentiary hearing was held on defendant's motion to suppress. Defendant Green was represented by Assistant Federal Public Defender Todd M. Schultz. The Government was represented by Assistant United States Attorney D. Michael Green. The Government called Detective Andrew Bolin of the Grandview Police Department as a witness. The defense called no witnesses to testify.

## II. FINDINGS OF FACT

On the basis of the evidence adduced at the evidentiary hearing, the undersigned submits the following proposed findings of fact:

1.      On September 4, 2014, at approximately 9:20 a.m., Detective Andrew Bolin, then a patrol officer, was dispatched to the area of 14700 Pine View Drive, Grandview, Missouri, on a suspicious person call.  (Tr. at 3)  The calling party reported that an individual had approached their residence and requested a drink.  (Tr. at 3)  The calling party was concerned due to a recent burglary.  (Tr. at 3)

2.      Detective Bolin described the area as residential.  (Tr. at 4)  Pine View Drive is a residential street and 147th Street, the cross street, is essentially a thoroughfare.  (Tr. at 4)  At this time of the morning, 147th Street was relatively busy.  (Tr. at 4)  When Detective Bolin got to the intersection of Pine View Drive and 147th Street, he observed a sedan parked at the intersection, in front of the stop sign.  (Tr. at 5)  The hood and trunk of the sedan were up and tools were strewn about the vehicle.  (Tr. at 5)

3.      Detective Bolin parked behind the sedan, got out of his patrol vehicle and found a man passed out in the driver's seat of the sedan.  (Tr. at 5, 7-8)  Detective Bolin had dispatch run the license plate on the sedan and it responded to a 1988 Oldsmobile.  (Tr. at 11)  However, the vehicle was actually a 1996 Saturn.  (Tr. at 11)  Detective Bolin testified that it is illegal to operate a vehicle on the public streets with a license plate that does not go to that particular vehicle.  (Tr. at 11)  Detective Bolin also provided dispatch with the VIN (Vehicle Identification Number) from the vehicle.  (Tr. at 11-12)  Dispatch could find no record of this VIN.  (Tr. at 49)  Detective Bolin found this unusual.  (Tr. at 49)

4.      Detective Bolin spoke to the man in the vehicle.  (Tr. at 12)  The man identified himself as Michael Green.  (Tr. at 8)  Green told Detective Bolin that his car had broken down off the interstate the night before and that he was staying at the Econo-Lodge.  (Tr. at 12-13)  Detective Bolin testified that there was no Econo-Lodge in the area. (Tr. at 12)  Detective Bolin asked Green for some identification and Green provided him with a Missouri identification card; he did not have a driver's license.  (Tr. at 13)  Detective Bolin also determined through dispatch that Green did not have a driver's license.  (Tr. at 13)  Detective Bolin testified that it is illegal to operate a vehicle on the public streets without a valid driver's license.  (Tr. at 13-14)  Dispatch also advised that Green was under state supervision for possession of a controlled substance and burglary and that he was known to be armed.  (Tr. at 16)  Additional officers arrived on the scene.  (Tr. at 14-15)

5.      Detective Bolin asked defendant Green to get out of the vehicle.  (Tr. at 16)  Detective Bolin was concerned by the story he was receiving from Green.  (Tr. at 16)  Green was in a high-crime neighborhood in Grandview in a car that was not registered to him with plates that did not belong on the car.  (Tr. at 16)  Green said that the car belonged to his girlfriend and provided a telephone number for a girlfriend, but then said that the phone number he provided was not the girlfriend who owned the vehicle.  (Tr. at 18)  Green told Detective Bolin that he had some friends coming to get him, but he would not provide any names.  (Tr. at 20)  Green was unable to provide any proof of insurance for the vehicle.  (Tr. at 19)

2

6. Detective Bolin asked defendant Green if there was anything illegal in the vehicle and Green told him that there was not. (Tr. at 45) Detective Bolin asked Green for consent to search the vehicle. (Tr. at 17) Green declined. (Tr. at 17)

7. Detective Bolin decided to have the vehicle towed. (Tr. at 19, 21-22) The factors Detective Bolin took into account in his decision included that the vehicle was broken down on a public roadway, the vehicle was parked in front of an intersection,[1] the vehicle was on a public roadway without displaying proper plates, defendant Green was an invalid driver and Green was unable to provide any proof of insurance. (Tr. at 19, 22) Green implied to Detective Bolin that he had already made arrangements for a tow, but when Detective Bolin tried to confirm that by obtaining the tow company's name or number, Green declined to provide that information. (Tr. at 22-23) The vehicle had been broken down at this intersection for several hours. (Tr. at 47-48)

8. The Grandview Police Department Standard Operating Guidelines for Custody and Non-Custody Tows provides the following definition for a Custody Tow: "A vehicle is towed because it is … disabled on a public street …." (Government's Ex. 2 at 1) Detective Bolin testified that based on his judgment as an officer and given the police policy in place, the vehicle had to be towed. (Tr. at 48) The tow policy further provides that an inventory of the contents of a vehicle must be completed before a vehicle is towed. (Tr. at 22; Government's Ex. 2 at ¶ 3.1)

9. Defendant Green was presented with two traffic citations and was told that he was not under arrest. (Tr. at 25-26) Green eventually left the scene. (Tr. at 27)

10. Officers performed an inventory search of the vehicle. (Tr. at 27) Inside a brown zippered pouch, officers found approximately $500 in cash, a bubble pipe which is commonly used to ingest methamphetamine, and approximately three grams of methamphetamine. (Tr. at 30-31; Government's Exs. 9-12) Officers also found two baggies containing methamphetamine within what appeared to be a trash bag. (Tr. at 32; Government's Exs. 13-14) The two baggies contained over 400 grams of methamphetamine. (Tr. at 33)

11. A patrol officer was sent to try and locate defendant Green who had left the scene. (Tr. at 33-34) Green was found at a nearby gas station and placed under arrest. (Tr. at 34)

### III. DISCUSSION

Defendant Green seeks to "suppress all evidence and testimony relating to such evidence

---

[1] Other vehicles were being forced to drive in the opposing lane of traffic in order to avoid hitting defendant Green's vehicle. (Tr. at 23-24)

3

that was obtained from the search of Mr. Green's vehicle because such search violated Mr. Green's rights under the Fourth Amendment to the United States Constitution." (Motion to Suppress Evidence (doc #25) at 1) According to defendant, the search cannot be justified as an inventory search because the decision to tow the vehicle and inventory its contents was not conducted pursuant to any standardized departmental policy, but was instead made to facilitate an exploratory search for evidence of criminal activity that is prohibited by the Fourth Amendment. (Id. at 3) Defendant argues that because his vehicle was not abandoned or left unattended and because he had the intention of arranging for its removal, the officers' decision to tow the vehicle was contrary to state law. (Id.)

As set forth by the United States Supreme Court in South Dakota v. Opperman, 428 U.S. 364 (1976):

> In the interests of public safety and as part of what the Court has called "community caretaking functions," … automobiles are frequently taken into police custody. … To permit the uninterrupted flow of traffic …, disabled … vehicles will often be removed from the … streets at the behest of police engaged solely in caretaking and traffic-control activities. … The authority of police to seize and remove from the streets vehicles impeding traffic or threatening public safety and convenience is beyond challenge.

Id. at 368-69 (citation omitted). Accord United States v. Harris, 795 F.3d 820, 822 (8th Cir. 2015). See also State v. Kelley, 678 S.W.2d 852, 854 (Mo. Ct. App. 1984)("impoundment of a vehicle, and a subsequent inventory, without a warrant, is justified … if the location or condition of the vehicle is such that the safety or interest of the public requires its removal and police intervention is the only viable option.")

Defendant Green's vehicle was broken down on a public roadway in front of an intersection causing other vehicles to be forced to drive in the opposing lane of traffic in order to avoid hitting it. (See Fact No. 7, supra) Despite being broken down for several hours, the driver

4

of the vehicle apparently had made no arrangements to have the vehicle towed. (Id.) The Grandview Police Department Standard Operating Guidelines for Custody and Non-Custody Tows provides the following definition for a Custody Tow: "A vehicle is towed because it is … disabled on a public street …." As set forth above, defendant Green's vehicle certainly falls under the definition of a custody tow as it had been broken down at this intersection for several hours. (See Fact No. 8, supra) Detective Bolin testified that based on his judgment as an officer and given the police policy in place, the vehicle had to be towed. (Id.) The tow policy further provides that an inventory of the contents of a vehicle must be completed before a vehicle is towed. (Id.)

"The inventory search exception to the Fourth Amendment's warrant requirement permits law enforcement to inventory the contents of a vehicle that is lawfully taken into custody, even without a warrant or probable cause to search." United States v. Garreau, 658 F.3d 854, 857 (8th Cir. 2011). An inventory search of a vehicle is valid if it is conducted pursuant to standardized police procedures and not done in bad faith or for the sole purpose of investigation. See Colorado v. Bertine, 479 U.S. 367, 372 (1987). In United States v. Arrocha, 713 F.3d 1159 (8th Cir. 2013), the Eighth Circuit Court of Appeals provided the following guidance, which appears pertinent in this case:

> Arrocha asserts on appeal that the police were merely rummaging … in order to discover incriminating evidence. … Although the disturbance calls gave the officers reason to suspect there might be a gun in Arrocha's car, when there is a valid reason to impound a vehicle, "[t]he presence of an investigative motive does not invalidate an otherwise valid inventory search." United States v. Garner, 181 F.3d 988, 991 (8th Cir. 1999), cert. denied, 528 U.S. 1119 (2000).

Arrocha, 713 F.3d at 1163-64. See also United States v. Harris, 795 F.3d 820, 822 (8th Cir. 2015) ("when police are conducting 'inventory searches according to such standardized policies, they

5

may keep their eyes open for potentially incriminating items that they might discover in the course of an inventory search, as long as their sole purpose is not to investigate a crime.'")(quoting United States v. Marshall, 986 F.2d 1171, 1176 (8th Cir. 1993)); United States v. Garreau, 658 F.3d 854, 858 (8th Cir. 2011).

The Court finds that the decision to tow defendant Green's vehicle was made on the basis of safety and that Detective Bolin had no other viable alternative to having the vehicle towed. The Court further finds that the inventory search of the vehicle was conducted pursuant to standardized police procedures and that it was not done in bad faith of for the sole purpose of investigation. There is no constitutional violation.

## IV. CONCLUSION

Given the foregoing, it is

RECOMMENDED that the Court, after making an independent review of the record and applicable law, enter an order denying defendant Green's Motion to Suppress Evidence (doc #25).

Counsel are reminded they have fourteen days after being served a copy of this Report and Recommendation within which to file and serve objections to same. A failure to file and serve objections by this date shall bar an attack on appeal of the factual findings in this Report and Recommendation which are accepted or adopted by the district judge, except on the grounds of plain error or manifest injustice.

                                             /s/ *Sarah W. Hays*
                                              SARAH W. HAYS
                                UNITED STATES MAGISTRATE JUDGE